IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RILEY THORNOCK,                          )
                                         )
            Plaintiff,                   )        Case No. 7:23-cv-00638
                                         )
v.                                       )        **MEMORANDUM OPINION**
                                         )
JES FOUNDATION REPAIR, *et al.*          )        By:   Hon. Thomas T. Cullen
                                         )              United States District Judge
            Defendants.                  )

On October 5, 2023, Plaintiff Riley Thornock, proceeding *pro se* and *in forma pauperis*, filed suit against his former employer, JES Foundation Repair and Groundworks ("JES"), for alleged Americans with Disabilities Act ("ADA") violations and several state law claims. Before serving JES, Thornock amended his complaint as of right and added a variety of constitutional claims against Bedford County stemming from the county's enforcement of its zoning code and ensuing state court litigation. The matter is before the court on motions to dismiss from JES and Bedford County (collectively, "Defendants").

As explained in more detail below, the court will grant both motions to dismiss. It will also give Thornock leave to amend his complaint with respect to his claims against JES. That means Thornock may file an amended complaint that provides more detail about any claim he has against JES.[1]

## I.    BACKGROUND

At this stage, the court presumes the sparse facts set forth in Thornock's complaint are

---

[1] And only that. Thornock *does not have leave to add additional parties or unrelated claims*. If he attempts to do so, the court will dismiss his case.

true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   JES

Thornock's operative complaint contains few details about his time working for JES, and the few facts therein are not entirely consistent. This much is clear: Thornock worked for JES in a sales capacity at some point. (Am. Compl. at 1, 3. [ECF No. 19]) He claims that his employment agreement with JES included a promise that the company would provide him sales leads and pay him a commission on those sales. (*Id.* at 3.)

After starting with JES, though, Thornock clashed with his manager, Nick Feaster ("Feaster"), who allegedly "engaged in favoritism, publicly criticized [him], manipulated the distribution of leads, and pressured [him] to use unethical sales tactics." (*Id.* at 3.) Thornock contends that he refused to follow the tactics Feaster told him to use because he "preferred to engage in ethical sales practices." (*Id.* at 4.) Thornock further claims that he "completed all assigned goals" and was performing well as an employee, but at some point JES stopped providing him leads. (*Id.* at 3–4.) At a later meeting with a different manager, Bradley Mann ("Mann"), to discuss his "delayed goal achievement," Thornock "disclosed his mental health struggles, including suicidal ideations and poor mental health." (*Id.* at 4.) Then, Thornock asserts, JES "imposed unrealistic sales goals, vast amounts of pressure, and subjected him to disciplinary actions." (*Id.* at 3.) Feaster later fired Thornock, citing Thornock's "poor sales numbers over the past month"; Thornock, however, thinks that reason was pretextual and that he was really fired due to his manager's animosity towards him.

After JES terminated him, Thornock filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), received a right-to-sue letter from the

EEOC (ECF No. 3), and subsequently filed suit in this court (ECF No. 2). Thornock's

complaint is styled as bringing seven claims against JES:

> 1. Hostile Work Environment and Discrimination;
> 2. Failure to Provide Reasonable Accommodations;
> 3. Breach of Employment Contract;
> 4. Unethical Sales Tactics;
> 5. Retaliation for Disclosing Mental Health Issues;
> 6. Wrongful Termination; and
> 7. Failure to Address Managerial Misconduct.

(Am. Compl. at 3–5.) Thornock asserts that his second and fifth claims are brought under the

ADA but is silent as to the rest. (*Id.*) To compensate for JES's purported wrongs, Thornock

seeks $30,000,000 in damages. (*Id.* at 10.)

### B.   Bedford County

Thornock's operative complaint next lays out his claims against Bedford County, which

were also the subject of his "[f]ormer lawsuit in Virginia Supreme Court." (Am. Compl. at 6.)

Here, the court at times borrows from the Court of Appeals of Virginia's recitation of the

relevant facts and procedural history to fill in important gaps in the version provided by

Thornock. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("[A] federal court may

consider matters of public record such as documents from prior state court proceedings in

conjunction with a Rule 12(b)(6) motion.").

Thornock owned a warehouse in Bedford County that he attempted to use for a variety

of different businesses, the latest of which was a hostel. Beginning in 2018, Bedford County,

according to Thornock, "issued allegedly illegal building and zoning permits" that allowed

Thornock to operate his businesses. (Am. Compl. at 6.) Thornock does not provide any detail

as to what these permits allowed him to do,[2] but he claims he spent "an extensive amount of money . . . on renovations" without securing additional permission to operate as a hostel. (*Id.*) Thornock asserts that Bedford County "knowingly allowed [him] to openly operate in an unsafe environment until 2021." (*Id.* at 8.)

Thornock asserts that in 2021,[3] Bedford County sued him in Virginia circuit court to

---

[2] In another part of the complaint, Thornock admits that one of these permits "was only good for six months." (Am. Compl. at 8.)

[3] The court assumes Thornock's version of the story is accurate, but it provides the Court of Appeals of Virginia's recitation of the relevant state court litigation below to provide important details about Thornock's previous suit against Bedford County:

> On September 21, 2018, Bedford County brought an action in circuit court seeking to enjoin the Thornocks from continuing to engage in alleged zoning and building code violations involving a warehouse they were operating as a "hotel/motel/motor lodge." The Thornocks did not file an answer but instead filed a "brief." On October 27, 2021, the trial court found that the Thornocks had violated the county and state building codes and ordered them to cease using the warehouse for residential purposes. The trial court continued the case to January 5, 2022, to allow the Thornocks to remedy the violations and to seek the necessary zoning approvals. The Thornocks then filed a counterclaim against the County alleging that the County had violated their constitutional rights, had interfered with their attempt to earn a livelihood, and had failed to provide necessary services.
>
> On January 12, 2022, the trial court entered an order indefinitely enjoining the Thornocks from "offering or advertising the Property for residential and dwelling uses," and forbidding anyone other than the Thornocks and their family from residing there. The order also granted the Thornocks leave to amend their counterclaim. The Thornocks amended their counterclaim three times and alleged, among other things, that the County had been negligent in their enforcement of the building code and zoning ordinances, thereby inducing the Thornocks to invest further in development of the property and to sustain financial losses that culminated in their filing bankruptcy. The County filed pleas in bar, including a sovereign immunity defense, and demurred.
>
> Following an evidentiary hearing and argument on October 3, 2022, the trial court dismissed the County's injunction action as moot because the Thornocks' property was "no longer being occupied, nor offered, for dwelling purposes of any kind." The trial court denied the County's sovereign immunity pleas in bar and demurrer to the Thornocks' counterclaim; however, it dismissed the Thornocks' counterclaim after finding that "the County was neither negligent nor grossly negligent, nor [guilty of] willful misconduct, in enforcing its building code and zoning ordinances."

enjoin him from continuing to operate his hostel. (*Id.* at 8–9.) Thornock claims Bedford County moved for "an unwarranted emergency injunction which accelerated the time clock on these proceedings unnecessarily" and "threatened to immediately eject nearly 20 residents." (*Id.* at 9.) That motion was denied, and, in the ensuing time, Thornock claims that he "worked to comply with safety requirements and spent tens of thousands of dollars to do so." (*Id.*) Then, Bedford County allegedly "used excessive force through [Child Protective Services] and the police to immediately eject [the hostel's residents] by falsely telling them that the building had been condemned." (*Id.*)

During that litigation, on January 20, 2022, Thornock filed a counterclaim, alleging an unconstitutional taking of his property and that Bedford County "had been negligent in their enforcement of the building code and zoning ordinances, thereby inducing [him] to invest further in development of the property and to sustain financial losses that culminated in their filing bankruptcy." *Thornock*, 2023 WL 3587854, at *1; (*see* ECF No. 41-1 at 1 (Thornock's state court counterclaim).) After an evidentiary hearing, the Bedford court dismissed Thornock's counterclaim with prejudice, finding that:

> (1) the County was neither negligent nor grossly negligent, nor did it commit willful misconduct, in enforcing its building code and zoning ordinances as pertaining to [Thornock's] property at 1026 Bandy Mill Road; (2) the County was not the proximate cause of the losses alleged by [Thornock]; and (3) there was no unconstitutional taking of [Thornock's] property.

(ECF No. 41-2 at 1). The court further dismissed Bedford County's request for injunctive relief as moot because, by that point, the property was no longer being used as a hostel. (*Id.* at

---

*Thornock v. Bedford Cnty.*, No. 1755-22-3, 2023 WL 3587854, at *1–2 (Va. Ct. App. May 23, 2023).

2.)

Thornock appealed the circuit court's decision to the Court of Appeals of Virginia, which affirmed the trial court's judgment on May 23, 2023, after holding that Thornock failed to perfect his appeal. *Thornock*, 2023 WL 3587854, at *4. Finding no reversible error, the Supreme Court of Virginia denied certiorari on October 18, 2023.[4] (ECF No. 41-4.)

Thornock added a variety of constitutional claims against Bedford County on November 14, 2023, when he amended his complaint as of right.[5] Specifically, Thornock appears to seek redress for Bedford County's (1) alleged violation of his due process rights both before and during the state court litigation, and (2) use of excessive force by filing an "emergency injunction" and ejecting Thornock's tenants by—allegedly falsely—notifying them the building was condemned. (Am. Compl. 6–11.) For these violations, Thornock seeks $30,000,000 in compensatory damages.

### C.   Relevant Procedural History

It is fair to say its procedural history is already somewhat tortured.[6] For purposes of

---

[4] The Supreme Court of Virginia later denied Thornock's petition for rehearing on February 1, 2024 (ECF No. 57-1).

[5] The court acknowledges that this matter is mis-joined, and if any part of his claim were to survive Bedford County's motion to dismiss, severance would be appropriate. *See* Fed. R. Civ. P. 21 (permitting the court, on its own, to drop mis-joined parties or sever any claims from the action).

[6] A quick scan of the docket sheet shows that Mr. Thornock is an unrelenting litigant whose litigation strategy is borderline contumacious. Since he filed his case in October 2023, by the court's count, he has filed nearly 50 pleadings, 15 of which are styled as "emergency motions" that are frequently frivolous. (*See, e.g.,* ECF No. 46 (requesting an emergency restraining order against the City of Salem's (which, despite Thornock's repeated pleas to join them improperly, was not a party in this matter) police department from conducting traffic stops on him after he was stopped twice and given tickets for using his phone and for speeding).) More troubling given his unrelenting strategy, Mr. Thornock admitted in a recent filing that he does not read all of the court's Orders (ECF No. 74 at 2)—but that does not stop him from filing motions that ignore the court's rulings (*see* ECF Nos. 68, 70, 72). To explain his inveterate behavior, Mr. Thornock attempts to take cover behind his pro se status, claiming he does not know better, that the court should forgive his indiscretion, and it should appoint him an attorney to cure his faults. The court has advised him that he is not entitled to an attorney and that his

the instant motions, Thornock amended his complaint as of right on November 14, 2023. (ECF No. 19.) After the court's *sua sponte* dismissal of several claims under 28 U.S.C. § 1915, only his claims against Bedford County and JES remained. (ECF No. 18.) On January 8, 2024, Bedford County moved to dismiss Thornock's claims against it (ECF No. 40), and on January 25, JES did the same (ECF No. 50). Each motion has been fully briefed, and because oral argument would not aid in the decisional process, the motions are ripe for decision.

## II.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

Thornock is proceeding *pro se*, so his amended "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (cleaned up). But his complaint still must state a right to relief

---

pro se status is not a secret tool that allows him to ignore the law or court rules. (*See, e.g.*, Order, Nov. 14, 2023, at 2–3 [ECF No. 18].)

that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Moreover, "this liberal construction does not require the court to ignore clear defects in pleading or to conjure up questions never squarely presented in the complaint." *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 760 (M.D.N.C. 2018) (cleaned up).

### III.   ANALYSIS

Thornock fails to state a claim upon which relief can be granted against Bedford County or JES, so their motions to dismiss will be granted. The court will, however, allow Thornock to amend his complaint, but only to attempt to salvage his claims against JES.

### A.   Bedford County's Motion to Dismiss

Bedford County asserts that Thornock's claims are precluded by the doctrine of res judicata. (Bedford Cnty. Br. Supp. Mot. Dismiss at 3 [ECF No. 41].) Thornock counters that the present suit is about constitutional wrongs he did not raise in his state-court counterclaim.[7]

To evaluate Bedford County's argument, the court applies Virginia law. *See Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019). In the Commonwealth, Virginia Supreme Court Rule 1:6 governs res judicata, or claim preclusion:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were

---

[7] Typically, a motion to dismiss is not the time to consider an affirmative defense like res judicata. *See Edwards*, 178 F.3d at 243. But res judicata is properly analyzed in a motion to dismiss "when the defense appears on the face of the complaint." *Ballesteros v. MTGLQ Investors, LP*, No. 1:23-cv-396, 2023 WL 7388903, at *2 (E.D. Va. Nov. 8, 2023). The heading for Thornock's claims against Bedford County reads, "Former Lawsuit in Virginia Supreme Court (Record 23084)" and discusses his state court case extensively. (Am. Compl. at 6–10.) Res judicata therefore is apparent from the face of Thornock's complaint, and the court will consider the defense. *See Minor v. Nationstar Mortgage, LLC*, No. 3:17-cv-258, 2017 WL 2829620, at *2 n.2 (E.D. Va. 2017).

> raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

Va. Sup. Ct. R. 1:6(a). Under that rule, a defendant seeking to assert the affirmative defense "must show that: (1) there was a prior claim for relief decided on the merits by a valid and final judgment; (2) the parties are identical or in privity with each other; and (3) the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim in the first suit." *Blick v. Deutsche Bank Nat'l Tr. Co.*, No. 3:14-cv-00022, 2014 WL 4052820, at *3 (W.D. Va. Aug. 15, 2014).

Here, the first two elements are satisfied. The Bedford County Circuit Court "dismissed with prejudice" Thornock's counterclaims and—among that court's other findings absolving Bedford County's enforcement of its building code and zoning ordinance—found "no unconstitutional taking of [Thornock's] property." (ECF No. 41-2 at 1); *cf. Raley v. Haider*, 747 S.E.2d 812, 815 (Va. 2013) ("[A] judgment of dismissal which expressly provides that it is 'with prejudice' operates as res judicata . . . .") (cleaned up). Second, the parties are identical. But Thornock disputes the last element, asserting that his novel constitutional claims merit consideration because he did not raise them in his counterclaim.[8]

---

[8] Thornock appears to concede that his constitutional-takings claims against Bedford County in this suit are barred by res judicata because he only argues that his novel claims are not barred. (*See* Thornock Resp. Bedford Cnty. Mot. Dismiss at 1–2. [ECF No. 42].) His state-court counterclaim asserted the same takings claims against Bedford County based on its zoning decisions that Thornock sets forth in the instant lawsuit (*see* ECF No. 41-1 at 4), and the Bedford County Circuit Court dismissed those claims with prejudice by final order (*see* ECF No. 41-2 at 1). His attempt to bring those claims after they were dismissed with prejudice in a state court case is a paradigmatic case for res judicata, and his takings claims will be dismissed.

### 1.  Novel Claims

Thornock argues that his amended complaint brings novel constitutional claims against Bedford County—alleged violations of due process and uses of excessive force—that were not addressed in state court, which in turn protects his complaint from dismissal under res judicata. (Thornock Resp. Bedford Cnty. Mot. Dismiss at 1–2.) He is wrong. "Res judicata bars not only claims that were in fact brought in the earlier suit, but also those that *could have been litigated.*" *Blick*, 2014 WL 4052820, at *3 (emphasis added). "Virginia applies a transactional approach, asking whether the claims in each suit arise out of the same transaction or occurrence." *Barnwell v. Ark Land, LLC*, 547 F. Supp. 3d 526, 534 (W.D. Va. 2021). "Under Rule 1:6, it does not matter that the second suit includes alternative legal theories . . . . [I]f the underlying dispute produces different legal claims that can be joined in a single suit" but were not, the aggrieved party forfeits those claims. *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 895 (Va. 2017).

Thornock's otherwise opaque complaint makes clear that any constitutional claim raised against Bedford County relates to how they enforced their zoning laws in relation to his property in Bedford County. In other words, Thornock's constitutional claims in this suit arise from the very same "common nucleus of operative facts" as those claims raised in state court. *Funny Guy, LLC*, 795 S.E.2d at 898 (cleaned up). Thornock could have raised his due process or excessive force claims in his state-court counterclaim, and his failure to do so prevents him from raising them in the first instance here. *See id.* at 895.

Thornock's last category of claims—what he calls the primary focus of his amended complaint—are "the extensive due process violations that occurred throughout the trial[,]"

including supposed improper service and "venue shopping." (Thornock Resp. Bedford Cnty. Mot. Dismiss at 2–3.) According to Thornock, "th[o]se issues have not been properly litigated and they greatly affected the outcome of the original judgment." (*Id.*) But those claims are also barred by res judicata; the same res judicata principles apply to a claim about an alleged procedural wrong during the previous litigation that a diligent pro se party could have raised during the preceding litigation. *See Blick*, 2014 WL 4052820, at *4.

In *Blick*, the pro se litigant alleged that "Defendant committed fraud during the course of litigating" the first case. *Id.* at *3. The *Blick* court held that the claim based on the defendant's purported procedural conniving in the first case could have reasonably been brought to the court's attention during that earlier case, so bringing the claim in a subsequent suit was barred by res judicata under Virginia law. *Id.* at *4 ("The effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to every claim which properly belonged to the subject of litigation[,] and which the parties, by the exercise of reasonable diligence, might have raised at the time.") (quoting *Reaves v. Roanoke Redevelopment & Hous. Auth.*, No. 7:09-cv-560, 2009 WL 366045, at *6 (W.D. Va. Feb. 12, 2009)). In so doing, the court specifically noted that the plaintiff's pro se status did not excuse his failure to raise the procedural issue in the first case such that he could bring it in the second case. *Id.*

The same is true here. Thornock has proven himself to be a capable litigant; whether or not he actually raised the issues of improper service and so-called venue shopping during his state-court case against Bedford County, there is no reasonable dispute that he *could* have. This renders any "new" claim he has based on those alleged wrongs barred by res judicata.

### 2.   Full and Fair Hearing

Construing his complaint liberally, Thornock's claims about alleged procedural defects could be construed as an argument that he did not receive a full and fair opportunity to litigate his claims in state court. Res judicata "does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81 (1982) (internal citations omitted). A state court proceeding gives a litigant the "full and fair opportunity to litigate," if it "satisf[ies] the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Lee v. Winston*, 717 F.2d 888, 894 (4th Cir. 1983) (quoting *Kremer*, 456 U.S. at 481).

The court has no basis to conclude that the state court's procedure was anything but constitutionally sound, and its judgment must be given "the full-faith-and-credit guaranteed by [28 U.S.C.] § 1738." *Id.* (cleaned up). Thornock asserts that the state procedure was lacking for myriad reasons (*see* Thornock Resp. Bedford Cnty. Mot. Dismiss at 2–3; Am. Compl. at 7–9), but provides no facts or authority to support his claim that the state court proceedings were constitutionally deficient (*see* Thornock Resp. Bedford Cnty. Mot. Dismiss at 2).

At bottom, Virginia's res judicata law evinces two principles that render Thornock's contrary arguments unpersuasive: (1) "litigants must make the most of their day in court[;]" and (2) "[t]he law should afford one full, fair hearing relating to a particular problem—but not two." *Funny Guy, LLC*, 795 S.E.2d at 890 (cleaned up). If Thornock did not make the most of a fair shot in state court, this court is not permitted to give him a second bite at the apple.

Because Thornock's claims against Bedford County are barred by res judicata, they will

be dismissed with prejudice.[9] *See Morris v. Shellpoint Mortgage Servicing*, No. DLB-19-1213, 2021 WL 4478723, at *5 (D. Md. Sept. 30, 2021) ("Because res judicata bars litigation of claims resolved by the state court judgment, dismissal with prejudice is appropriate."); *see also Minor*, 2017 WL 2829620, at *2–3 (finding pro se litigant's claims barred by res judicata and denying motion to amend for futility in a case with a comparable state-court procedural history).

### B.     JES's Motion to Dismiss

JES moved to dismiss all claims against it, asserting Thornock's threadbare complaint failed to state any of his purported claims. (JES Mot. Dismiss at 1 [ECF No. 50].) Thornock responded by filing what is styled as a "Motion in Opposition of Dismissal of Suit Against [JES] and Motion to Request Leave to Amend Complaint." (ECF No. 53.) He opposes each of JES's substantive arguments, and seemingly in the alternative, requests leave to amend to bolster his claims, interposing additional facts and allegations that were not in his operative complaint. The court cannot consider those additional facts in ruling on JES's current motion to dismiss. *See Marsh v. Va. Dep't of Transp.*, No. 6:14-cv-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) (collecting cases for the rule that even a pro se plaintiff's "complaint may not be amended by the briefs in opposition to a motion to dismiss") (cleaned up). Instead, the court is called to ask only if Thornock's operative complaint states any of his purported claims against JES. *Edwards*, 178 F.3d at 243 ("The purpose of a Rule 12(b)(6) motion is to test the

---

[9] As the court has dismissed Thornock's claims on res judicata grounds, it does not address Bedford County's alternative arguments for dismissal. But the court notes that Bedford County's *Rooker-Feldman* argument is also likely meritorious. *See Estate of Doe 202 ex rel. HS v. City of N. Charleston*, No. 2:23-CV-05139, 2024 WL 1494931 (D.S.C. Feb. 27, 2024), *R&R adopted*, No. 2:23-CV-5139, 2024 WL 1230265 (D.S.C. Mar. 22, 2024) ("Here, by Plaintiff's own account, he will have to show that the state court committed procedural and/or substantive errors to succeed on his claim in this action. Such a claim is expressly prohibited under the *Rooker-Feldman* doctrine.") (cleaned up).

sufficiency of a complaint."). It does not.

### 1. ADA Claims

Construing Thornock's complaint liberally, he attempts to set forth ADA-related claims against JES based on a hostile work environment, failure to provide reasonable accommodations, and retaliation. JES argues that each of these claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). The court agrees.

#### i. Hostile Work Environment/Discrimination

Thornock claims that one of his managers, Feaster, created a hostile work environment by "engag[ing] in favoritism, publicly criticiz[ing] [Thornock], manipulat[ing] the distribution of leads, and pressure[ing] [Thornock] to use unethical sales tactics." (Am. Compl. at 3.) Thornock alleges the manager's "actions contributed to a toxic work environment and discriminated against [him] based on his preferred sales approach and mental health struggles." (*Id.*) The resulting harm of that discrimination was his termination. (*Id.* at 4.)

JES appears to interpret these claims as brought under Title VII of the Civil Rights Act and asserts Thornock fails to state a claim because he does not allege membership in a protected class. (JES Br. Supp. Mot. Dismiss at 3.) While true that "disability is not a protected class under Title VII," *Crow v. McElroy Coal Co.*, 290 F. Supp. 2d 693, 696 (N.D.W. Va. 2003), JES's construction of the claims misses the mark. A liberal interpretation of Thornock's *pro se* complaint requires the court to evaluate these claims under the ADA, given that, at its core, Thornock's complaint asserts employment related issues due to his alleged disability—his serious mental health issues. The court therefore construes Thornock's complaint as bringing

ADA hostile work environment and discriminatory discharge claims, not Title VII-based claims.

As relevant here, the ADA prohibits an employer like JES from discriminating against qualified employees "on the basis of disability in regard to . . . discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). That mandate creates a cause of action for a qualified individual who has been subjected to a hostile work environment due to his disability. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175–76 (4th Cir. 2001). And since the "ADA prohibits wrongful discharge as a form of disability discrimination," it also creates a cause of action for wrongful discharge. *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024).

At the threshold for both ADA claims, the plaintiff must allege he was disabled. *See* 42 U.S.C. § 12112. While challenging another one of Thornock's ADA claims, JES argues that Thornock's complaint, which vaguely claims he has mental-health issues and suicidal ideations, does not show he is disabled under the ADA. (*See* JES Br. Supp. Mot. Dismiss at 5–7.) That argument is well-taken, and Thornock's complaint may well come up short in establishing that his alleged mental-health issues and suicidal ideations rise to the level of a disability under the ADA. *See* 42 U.S.C. § 12102(1) (defining disability). But at this stage, the court thinks a more glaring flaw exists in Thornock's complaint that mandates the dismissal of his hostile work environment or discriminatory discharge claims: as pleaded, Thornock fails to allege facts that would support his theory that he was discriminated against *because* of his mental health issues. *See Kelly*, 90 F.4th at 170 (holding that a failure to "allege that the employer was motivated by his disability" was fatal to an ADA claim).

To state a claim for either an ADA hostile work environment or discriminatory discharge, Thornock must allege that JES harassed or discriminated against him "on the basis of disability." 42 U.S.C. § 12112(a). That means, for his hostile work environment claim to survive a 12(b)(6) motion, Thornock must plead specific facts that suggest "the harassment was based on his disability." *Fox*, 247 F.3d at 177. Similarly, "[t]o raise a reasonable inference of disability discrimination in a wrongful discharge case, an employee must allege that his disability was a 'but-for' cause of his termination." *Kelly*, 90 F.4th at 169. Dismissal of an ADA discrimination claim is warranted when "the district court could only have inferred disability discrimination by speculating as to the [employer's] motivation." *Id.* at 171.

Thornock "alleges no facts suggesting that [JES] harbored a discriminatory motive." *Kelly*, 90 F.4th at 169. In fact, he alleges different motives entirely. As to his hostile work environment claim, Thornock alleges that Feaster "engaged in favoritism, publicly criticized [him], manipulated the distribution of leads, and pressured [him] to use unethical sales tactics." (Am. Compl. at 3.) As for his discriminatory termination claim, Thornock asserts that he was fired by Feaster due to poor performance or "personal animosity." (*Id.* at 4.) While Thornock states that he told a different manager, Mann, about his "suicidal ideations and poor mental health" during a meeting about his "delayed goal achievement," Thornock does not allege that he ever told Feaster the same, or that that Feaster otherwise knew about his mental health struggles. (*Id.*) While Thornock presents facts that show he clashed with Feaster, there are no facts to suggest any discrimination was due to his disability.[10] To be sure, Thornock's

---

[10] A fair reading of Thornock's complaint indicates that his issues with Feaster pre-dated his disclosure of his mental health issues to Mann.

complaint contains legal conclusions that he suffered adverse actions because of his mental health issues, but "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Thornock "cannot rely solely on his own speculation that he was mistreated due to his disabilities. He must allege some facts tending to show that the mistreatment he claims to have suffered was causally related to his disabilities." *Kelly v. Town of Abingdon*, 437 F. Supp. 3d 517, 526–27 (W.D. Va. 2020), *aff'd* 90 F.4th 158. He has not done so, and because the court is left to guess as to JES's motivation for firing him, Thornock's ADA hostile work environment and discrimination claims will be dismissed.

## ii.  Reasonable Accommodations

JES next moves to dismiss Thornock's ADA reasonable accommodations claim because his complaint does not allege facts that he is disabled or that he ever requested an accommodation. For purposes of the instant motion, the court agrees on the latter point.

"Before an employer is required to accommodate a disabled employee, 'the employee must make an adequate request, thereby putting the employer on notice.'" *Kelly*, 90 F.4th at 166 (quoting *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 179 (4th Cir. 2023)). Thornock's complaint does not contain any facts that suggest he requested accommodations that would have allowed him to do his job notwithstanding his mental-health struggles, much less that JES was aware of any such requested accommodations or denied them. Instead, he only alleges that JES was aware of his suicidality and subjected him to "unrealistic sales goals, vast amounts of pressure, and subjected him to disciplinary actions." (Am. Compl. at 3.) Though Thornock invites the court "to assume" that he asked for accommodations by asking not to be fired or

asking to "ease up on the hyper pressure" (Thornock Resp. JES Mot. Dismiss at 10–11), Thornock does not assert that he actually made either of those requests. "It is not difficult to request an accommodation[,]" but a plaintiff must actually "communicate his . . . desire for an accommodation." *Kelly*, 90 F.4th at 166 (cleaned up). The court declines to conjure up facts, or draw specious inferences, not supported by Thornock's complaint, and this claim will be dismissed.

### iii.     Retaliation for Disclosing Mental Health Issues

JES asserts that Thornock failed to state an ADA retaliation claim because he does not allege that he "engaged in protected conduct or that any such protected conduct was causally related to any adverse employment action." (JES Br. Supp. Mot. Dismiss at 10.) The court agrees.

The ADA's retaliation prohibition makes unlawful "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge . . . under this chapter." 42 U.S.C. § 12203(a)). To state an ADA retaliation claim, a plaintiff must allege that "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Thornock's claim fails at the first step.

The protected conduct for purposes of an ADA retaliation claim "includes opposing a discriminatory practice by asserting a claim, or otherwise objecting to a discriminatory practice that violates . . . the ADA." *Estes v. Va. Peninsula Reg'l Jail*, No. 4:11-cv-166, 2012 WL 8134467, at *3 (E.D. Va. June 12, 2012), *aff'd*, 491 F. App'x 428 (4th Cir. 2012). The purported basis for

Thornock's retaliation claim is that he "disclosed his mental health struggles, including suicidal ideations and poor mental health, to his manager, . . . during a discussion about his delayed goal achievement. Rather than providing support and accommodations, the company retaliated against [him] by subjecting him to a meeting with the intention to fire him." (Am. Compl. at 4.) This mere disclosure by Thornock of his mental health problems is not "protected activity" for purposes of an ADA retaliation claim. *See Thompson v. City of Charlotte*, 827 F. App'x 277, 279 (4th Cir. 2020). Accordingly, this claim will be dismissed.

### 2.    State Law Claims

Thornock's operative complaint also brings claims for (1) breach of employment contract; (2) "unethical sales tactics;" (3) wrongful termination;[11] and (4) "failure to address managerial misconduct." (Am. Compl. at 4–5.) These claims, to the extent they exist, operate purely under state law. Having dismissed the claims that give the court original jurisdiction, the court declines to exercise supplemental jurisdiction over Thornock's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill*, 58 F.3d 106, 109–10 (4th Cir. 1995).

### 3.    Motion to Amend

Throughout his opposition to JES's motion to dismiss, Thornock expresses a desire to amend his complaint to cure any deficiencies the court finds and attempts to show the court how he intends to fix them in his amended complaint. The court construes that part of Thornock's opposition brief as a motion to amend his complaint.

When presented with a motion to amend a complaint, the court "should freely give

---

[11] While the court has determined that Thornock's operative complaint does not state an ADA wrongful termination claim, it appears that he brings the same charge under state law as well.

leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend if the amendment is (1) prejudicial to the nonmoving party, (2) sought in bad faith, or (3) futile. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). JES argues that Thornock's amendment would be futile based on the pieces of his proposed amendment complaint that Thornock included in his opposition brief. (JES Reply Br. at 2–3 [ECF No. 54].) JES's arguments are well-taken and may be raised in a subsequent motion to dismiss, but the court will permit Thornock to amend his complaint as to his claims against JES. Because a complaint cannot be amended in an opposition brief to a motion to dismiss, the segments added by Thornock in his brief cannot fairly be seen as a standalone proposed complaint or assessed for futility.

JES does not assert prejudice or bad faith as grounds for denying leave to amend. Because it is too early to consider the futility of any amended complaint, the court will grant Thornock leave to file an amended complaint that addresses only his employment-related claims against JES. *See Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) (giving the court discretion in its disposition of a motion to amend). Thornock must file his amended complaint within 21 days of the issuance of this Memorandum Opinion and accompanying Order. The court makes clear to Thornock that he has leave to supplement his allegations about his employment-related claims *against JES only*. If he attempts to file anything further, the court will dismiss his suit. *See* Fed. R. Civ. P. 41(b).

## C.   Additional Matters

There remain additional matters pending before the court. Thornock moved to dismiss Bedford County's counsel based on what he perceives as a conflict of interest because Bedford

County's attorney is also the City Attorney for the City of Salem, a party that Thornock has attempted to add to this matter several times. (ECF No. 43.) Because the City of Salem is not part of this lawsuit, this argument is meritless; in any event, the court dismissed with prejudice Thornock's claims against Bedford County, so this motion will be denied as moot.

Thornock also recently moved the court to stay the case "until the US Supreme Court determines whether they will accept this case against Bedford County and make a ruling." (ECF No. 81.) On March 13, 2024, Thornock provided the court with a courtesy copy of a petition for a writ of certiorari to the Supreme Court of the United States. (*See* ECF No. 70.) That petition attempts to appeal "the decisions of the State Courts concerning the decisions made in the case of Bedford County v Thornock and to set precedent by granting us a court appointed attorney under these circumstances." (ECF No. 70-1 at 2; ECF No. 70 at 16.) Because Thornock does not appeal any decision of this court, the court retains jurisdiction and will not stay these proceedings on that basis. *Cf. Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance— it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

The alternate bases Thornock provides as justification for a stay are not persuasive. (ECF No. 81 at 2–4.) "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). As the court has told Thornock repeatedly, it is not unsympathetic to his position, but neither he nor the court can ignore the law. The court also reminds Thornock that he filed this lawsuit; no one forced him to do so.

The parties sued by Thornock have a right to challenge the allegations he has levied against them. Thornock has not shown by clear and convincing evidence that a stay is warranted, and the court finds it would be inequitable to delay these proceedings any further. *See Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018) (noting the court's broad discretion on a motion to stay). Thornock's motion to stay will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted, but Thornock will be permitted to file an amended complaint that bolsters his claims against JES.

The clerk is directed to forward a copy of this Order to the parties.

**ENTERED** this 23rd day of April, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE